Next matter is U.S. v. Root. U.S. v. Root Next matter is U.S. v. Root. May it please the Court, my name is Bradley Davis Barbin. I would like to reserve five minutes for my rebuttal. I would note, Your Honor, for Judge McKee. I was born in Johnstown, served as an AUSA in Pittsburgh, and was able to escape being a Steelers fan. And I'm an annual recovering Browns fan. Oh, my goodness. For what it's worth, there are a few of us out there. I may not help you in this case, but it's good to know there's somebody else out there. Right. Weren't you happy to see that we've got a Detroit Lions fan in there? You know, it made it easier to come up and admit to being a Browns fan. Yeah, makes the area a little richer somehow. Judge, this is a very interesting case. And it's interesting for the reason that the district court knew that this case belonged in Ohio. And that it very well could come back and be retried because the government was warned several times not to continue pushing this case in Philadelphia and to allow it to be transferred to Toledo, where it belonged. This defendant filed in Ohio on every return. He worked in Ohio. He lived in Ohio. There wasn't any question the venue was proper in Toledo, Ohio. But as you may know from seeing the brief of the government, in the portion that is marked related case, they were able to say that this case stemmed out of the Corey Kemp City Treasurer case involving Mr. McCracken. And I think that is the reason why the government won't answer Judge Schiller's question of, why are you fighting this? Why are you creating a hornet's nest? Why not just send this back to Ohio? And that's because they just didn't want to give up control of the case. Where did the evasive acts occur and where was the return to be filed? I'm sorry, Your Honor. Where did the evasive acts occur and where was the return to have been filed? That's the problem. Well, there were alleged evasive acts that occurred in the state of Washington. There were alleged evasive acts that occurred with an attorney named Marullo in Columbus, Ohio. But didn't they amend or agree to only proceed, I guess, on the year 2000? The district judge tried to pare this down and the government, about seven days before trial, finally agreed to give up 2000. But they still injected what the defendant argued was loans and what the government argued was bonuses from Mr. Parker, who lived in Washington. They still injected Mr. Marullo's income, which was, according to Mr. Marullo, he thought he was paying a corporation and it turned out it was a sole proprietorship. And Mr. Ford's income, which he thought was being sent to Lisa, a sole proprietorship. So they mixed apples and oranges together. And Mr. Zack, the assistant United States attorney, right in the transcript, and you can see it at my brief at page 30, admitted to the court the reason he did it is he was worried that he wasn't going to make the substantial deficiency that McKee calls for. This is a very small tax case. It's $40,000 when you glom all four years together into those four years. You can make $40,000, and he specifically thought he wasn't going to make substantial deficiencies. Small is very relative. Well, $40,000. For four years, though. That was before the 2000 was taken out. My point here is that the United States government has a duty to say what they mean and mean what they say, and they told Judge Schiller this is an assessment case and a payment case. They didn't prove that. We can say simple and elegant things, but if they're inaccurate, then they really ought to be examined closely by an appellate court. What happened here is they had a number of different types of underreporting, conducts. I always thought that, you know, if somebody gets a lot of money in and they file a tax return, they got paid for all kinds of things and they don't list it, that that's an assessment case. That is an assessment case. Assessment is a before case. A payment case is an after case. What makes it a payment case if they were hiding the money? Only after an assessment has actually been rendered. You've got to know how much you owe, and then if you take your assets and conceal them, like in the Pollen case, the doctor's wife straps $188,000 around her stomach, goes to Switzerland and deposits the money. That's a payment case. It's very easy to combine conduct in a payment case and say, we're talking about net liability. You owe this money, you knew you owed the money, and you took it out of the country and hid it in a bank. That's not this case. Aren't the overwhelming number of tax evasion cases assessment cases? Yes, they are, Your Honor. Just the traditional case, they audit the taxpayer, there's a lot of unreported income. That's what most cases seem to be. Almost all of them, and that's why it's pretty clear, too, even in the tax guidelines, all the prosecutors, all the agents are told the proper unit is one year. These prosecutors knew it in Philadelphia. They could have easily made this case in Toledo, but they don't want to because they want to give up their hold on this case, and as a result, they did a mess. You're going back and forth. I'm sorry, you're losing me. For Venue for a minute, I mean, Venue can be more proper in Toledo but also be legally proper here, right? So why don't you tell us why it was not legally proper here? Well, if you combine several years and you can't tell which one of the acts, and I guess I'm really trying to explain why Cantu needs to be vacated, and it is more a duplicity than a Venue argument. Well, then are you giving up the Venue argument or not? There's an argument that it was waived in the way that it was handled at court, so it's not my argument. I am giving it up. All right. The real issue here is the multiplicity. Duplicity. I think that is the issue. Yeah, the Venue thing is right here. It seems to me there's clearly a Venue in the Eastern District. Maybe they disagree with me. The multiplicity relates to the violation, the count of tax evasion to the years 201 through 3. That's correct, Your Honor. And that's a single count, right? It is, Your Honor. But it involves acts that happen in Washington, acts that happen in Venue. You're back to Venue. Forget Venue. With all due respect. Back away from Venue. When I'm trying to hone in on the merits of your Venue argument, you argue the merits of the case. When I'm trying to hone in on the merits of your merits argument, you go back to Venue. So you're leaving me, quite frankly, you're leaving me entirely unpersuaded. Pursue it. Pursue it. Let me try. Let me try it differently. The issue here is, does this circuit have a rule with respect to the kinds of charges that are multiplicities with respect to the difference between assessment and payment? I am arguing that in Pollen, they clearly said, here's a problem. When you have an assessment case and you take different types of conduct from different types of years, it can be that you could have a duplicity charge that would survive even without prejudice. In this case, I think there was prejudice. And the reason why I bring up the Parker loans, which are out of state, and the Marula income is it's not 1099 type of income that the government argued, well, it's all the same thing. It isn't the same thing. They're completely different types of evasive acts. They're completely different types of deficiencies. And what we don't know is, did an evasive act that was different than the RBI Commission evasive act, such as the loans in Washington, did they say to the jury, here is the element of evasion because there's a game being played on loans and bonuses, as opposed to deficiencies that clearly may have been made in Philadelphia. And count two is an assessment count, isn't it? It is. And count two convicts him of assessment evasion over a three-year period. It is, except for they told Judge Schiller it was both assessment and evasion. If they had said the truth, which was, this is just an assessment case, the judge would have said, don't put that other evidence in. They did, and now we have a general verdict. We have no idea what the jury decided. That was a question I had here. Yeah, that's really the issue. That's a question that I had here. As I recall it, if you get a criminal verdict in a single, straight, one-year tax assessment evasion case, if I could just make it very clear, and it says, yeah, we find that the defendant evaded taxes in the amount $200,000, that that would establish the civil liability for that amount. The government could then go after him for that money. What civil liability? And you'd have to know the year because that would fix interest. And it might also fix other things, too. But it would seem to me you'd have to know the year. What do we know that he was held liable for here? That's the issue. We don't, and that was why we asked the judge not to let the other acts in so that we could say, this is just Philadelphia money. He didn't do that. Now we have a general verdict. We have no way of knowing what actually was the criminal conduct jury found. Well, why would it matter if it's just Philadelphia money? The way I understand the venue law is that venue is appropriate in any district as long as some affirmative act of evasion occurred in that district. And there's testimony about him coming back and forth to Reading in connection with RBI. So take venue away from it and tell me why there is not still a problem with whether or not, if we can tell whether or not the jury found him guilty as to all of the years charged or as to maybe two of the three years charged or maybe one of the three years charged. Is there any way of telling from this? It seems to me that's the problem with multiplicity, not venue. We can't tell. They could have said it's all Parker. We don't know that any of it was Philadelphia. That's the problem. I thought you'd insist on putting venue in the answer. Would it matter if any of it were? Let's assume it was all Philadelphia. Would that make a difference? Let's assume that it was all Philadelphia, charged just as it is, and Parker goes away, all of the venue issues that you want to insist on letting them seep back into your argument even as you've abandoned them. They all go away. It's just Philadelphia stuff, just Eastern District stuff, not Philadelphia because Reading's involved. Would that make any difference in terms of whether or not the jury found him guilty of one year, two of the three or all three? I think it makes a difference. I think that the judge knew it, and that's why he spent so much time trying to tell the government don't do this, and they did it anyway. What remedy do you want from us on this appeal? What do you want us to do? I haven't really touched count three. I think what you need to do is you have to vacate count two. I think that what the government did in this case— How about count one? I think that what the government did, and they really were reaching on this case because they wouldn't bring McCracken in. They didn't have evidence of an agreement. They went ahead and tried to make inferences on tax returns. They never bothered to put in. They just made a giant mistake. But the question is what do you want us to do? I want you to vacate them both, but I understand that count two is a much more probative or stronger argument for me, so I'm asking at the very least that you consider vacating two. You just used the term count three, but there is no— Sorry, count one. Count one, you meant? No, it's my third argument. We only have two counts here, count one. Yeah, they dismissed seven of the nine counts right off the bat when they realized the problem. But count one is a different argument, and the argument there is the government made a mistake during the trial. What was the mistake? The mistake was they didn't put any McCracken tax returns in. They didn't put in any McCracken evidence. Let's assume that McCracken went along and he was dutiful as could be in the way commissions were paid. Even though the vehicle were in place for him to get cute with his taxes, he didn't. He religiously paid his taxes. Every April 15, he submitted his return. He even got it in early. But nevertheless, he had worked with the bookkeeper to help Root dodge his taxes. You'd still have a conspiracy without— You'd have aiding and abetting of a substantive offense, but you wouldn't have a conspiracy because you wouldn't be able to prove an agreement between McCracken and Root that they had both agreed— Why would that have to be the agreement? —that he was going to help? Why would that have to be the agreement? Why couldn't McCracken conspire with Root to help Root abet Root's taxes, but he's going to pay his own taxes? I think the court's decision in Grieco, which is even more factually intensive than this Root case, would prescribe it. In Grieco, they say we have to be very careful when we are taking these  Why would that be circumstantial? Let's assume that McCracken got on the witness stand and said, he flipped, cooperated with the government, even without immunity. He said, yeah, I did. He came to me. I like the guy. He was just starting out with the family. I thought I'd cut him a break, help him avoid his taxes. So I worked with him to structure this payment thing and this commission so he wouldn't have to pay his taxes. But I'm not going to go down that road. I pay all my taxes. Don't you still have a conspiracy with Root to help Root abet his taxes? I think McCracken has to say, I agreed to help him evade the taxes, and he didn't do that under this record. And there's no race judicata or collateral to stop all the criminal conviction. The jury couldn't infer that McCracken, your argument is really that because there's no evidence of what McCracken did, whether or not he violated the law, he couldn't have possibly conspired with Root. But that's not the law. In a drug conspiracy, you could have a conspiracy with an undercover informant, but it's still a conspiracy. The fact you're conspiring with an undercover police officer or confidential informant does not negate the fact that the defendant has agreed to do something that's illegal and taken an active preference of it. Why wouldn't the same be true here? The only thing I'd say, Judge, is this is a very thin case on the facts with respect to agreement. I agree that there are cases that support that law. I'm saying that when you keep drawing pieces away so that it is entirely inferential as to the agreement, then an argument may be made, and I'm making it that you should negate. The argument can be made, but the jury probably heard that argument and didn't buy it. I agree, Your Honor. They did not. And I'm not here to argue the facts. I thought they were very well briefed by the government as well. This isn't fact relevant. My argument is they made a mistake. What did the judge tell the jury they had to find to convict on the three-year evasion count? He did say that there had to be an act in the Eastern District of Pennsylvania. What did he tell them to which act? I mean, there were a number of alleged evasions. He didn't marry the instruction to which act, Your Honor. He just said that there had to be one, and he didn't explain in which year it had to be. Suppose the jury said, no, there's no evasion as to this and that, but there is as to some other matter. Could they convict them? I don't think they can, Your Honor. I think that is the reason why in assessment cases you've got to do it year by year. What did the judge tell the jury? In other words, if the court was submitting to the jury various acts of evasion, did the court tell the jury how many had to be found for a conviction, whether they all had to be found or one? He said just one, Your Honor. Just one. Now, we don't know what it was, though, then. That's the problem. That is the real issue of this case. Just one. Even if it was for 50 bucks? What was the defense here? I'm looking at this. I couldn't quite figure it out. There were a number of defenses. The wife testified that she received the income, but that they forgot and they later amended, and the government argued too late, and you're lying on the amendment, too. So the defense is a bumbler, I guess, would be a good way of saying it. Thank you, Mr. McBride. Thank you, Your Honor. May it please the Court. My name is Michael Fisher, and I represent the government in this appeal. Morning. I'm prepared to address the duplicity argument first, followed by the sufficiency argument. Why don't we just, well, it may be the same argument. Why was it charged this way? Why not break it up? Because this, you can very neatly slice it up by years. In fact, you've got it to the penny, his yearly, the yearly delinquency here. It's charged for all three years to the penny. So it's not like Pollen, where this guy is walking around with diamonds and money strapped to his wife so that she'll look like she's pregnant and you don't know what year it pertains to. He's just set on the course to evade any kind of liability for any year at all. You've got this guy right down to the penny. Why was it charged this way in one count? Well, we certainly could have charged it on a year-by-year basis, as the D.C. Circuit recognized in Shorter. The fact that a case can be charged in one particular way doesn't preclude it from being charged another way. All right, but what's different about this case in Shorter? What's different about this case? Well, why we charge this case this way is because the defendant engaged in a long-term consistent pattern of conduct that wasn't directed at any particular year. Well, it's three years. Three years. And Shorter was 11. You say it wasn't directed at any particular year. But again, you're charging him to the penny for every single year that his conduct is directed. Well, the fact that we charge three years together doesn't mean we don't have to prove specific deficiencies as to each year. That's still an element of the offense. But how do you know what year the jury bought? How do you know whether or not the jury accepted deficiencies as to year one, two, and three, or deficiencies as to years two and three? How do you know that? And when I asked about Shorter, in Shorter, the court was very careful. It says at the beginning of the opinion, to ensure also that any guilty verdict would be unanimous with respect to at least one affirmative act of evasion and one tax year of delinquency. The court gave the jury a special unanimity instruction. That didn't happen here. And required the jury to answer special interrogatories. That didn't happen here. Now, without doing either of those things, how can you cure the multiplicity problem? I agree you could charge it this way. But don't you have to do what the court did in Shorter? Shorter said to the jury, we've got a lot of liabilities here together for one year. Each of you has to read beyond reasonable doubt as to one particular act at least in the same year. And you have to be unanimous. And then if you want to do interrogatories, fine, to cover yourself. But without that instruction, don't you have a real problem? We don't believe that we do. And the reason is that that argument assumes that there is a problem in the way it was charged. And that goes to prejudice. Whether or not the jury could have disagreed on certain years goes to whether there was any prejudice. We believe that it was correct as charged. And that, therefore, there's no reason to even get to the discussion of whether the jury might have found an act of evasion going to one year but not to another. But an additional reason is that one- We're trying to get it. At least I'm trying to get it. Why was it correct as charged when you've got the case that you rely upon goes to pains to say that the court went out of its way to be sure that there was no prejudice and that there was unanimity as to one act by giving a specific instruction on unanimity and also giving special interrogatories? And that didn't happen here. And absent that, I don't know how you get around that problem. Well, the issue here is that Mr. Root's actions, specifically his decision to direct his commission payments be sent to New Perspectives rather than to him personally, as had been done previously, were not directed at any particular tax year. That decision had the effect of hiding his income for 2001, 2002, and 2003. Wait. When he had the commissions diverted in 2001, you're saying that that wasn't an attempt to avoid the taxes on those commissions for 2001? Well, it was an attempt to evade taxes with respect to all commission payments going forward. So if we had charged it year by year, that memo that he sent to Mr. McCracken saying, please send my commission payments to New Perspectives, that would have been an act of evasion that pertained to every single count that we would have charged under that scenario. And then you'd know for sure whether or not the jury bought your evidence. Well, I think we do know for sure that they bought the evidence in this case. How do we know? Well, they were instructed us to venue. So we know the jury found that a specific act of evasion occurred in the Eastern District. For each of the three years?  But there's no logical way to break it. Well, then maybe Mr. Bourbon is right by insisting, shoving the thing in our face. Maybe he's right to do that. Well, there's no way to look at this evidence and say the jury could have found that Mr. Root evaded taxes with respect to the RBI income in 2001, but not 2008. I thought about that, but we don't allow for directed verdicts in criminal cases. So I'm not sure that helps you. The fact that there's no way the jury could not have found the guy guilty, I mean, that's basically saying that you're entitled to a directed verdict at the end of the government's case. No, it goes to whether there's any prejudice resulting. Again, stepping back, we believe that under Pollin, this case was properly charged. Pollin clearly said that where you have a scheme that affects an individual's taxes for several years, that scheme may be charged in one count. There's nothing in Pollin that limits the logic of that decision to evasion of payment cases, and we believe this is both an evasion of assessment and an evasion of payment case, although the district court did not rely on that distinction. I think the district court here correctly said that it doesn't matter whether it's evasion of payment or evasion of assessment. If the government charges that the defendant engaged in a scheme that affected his taxes for multiple years, that may be charged as one count. That's what Pollin says, but I want to get back. I want to make sure you're being candid with the court. Is not the statute of limitations on this crime five years? I believe it's six years, but I'm not entirely certain. It's six years. All right, and the indictment was handed down when? 2007, I believe. March 20, 2007. Yes. And you charged him with a crime that occurred in 2000. That's correct. If you broke it up year by year, you blew the statute of limitations. Is that not why, the real reason why this was all charged together? Well, except that I think the 2000 income would have been paid, the income taxes would have been filed April 15, 2001, so that would have been just within the statute of limitations, the six-year statute of limitations. And the 2000 income is no longer an issue because that was taken out with the consent of the government. So the statute of limitations was not an issue here? That wasn't why it was charged the way it was? Well, I can't say for certain. I wasn't the prosecutor who charged the case, so I don't know whether it was a consideration, but I don't think it's an issue for purposes of this appeal. Okay. The problem with Pollen, again, it's clear from reading what happened in Pollen. In Pollen, there was no way, and we've been over this, there's no way in Pollen to connect any act with any year. You don't even know for sure how much money is involved in Pollen. It may well be, I don't know if it was tried as a net worth case, but it strikes me as a net worth case. But the same principle is there. It's just this guy's walking around with cash coming out of his shoes, his wife's belly, his safety deposit boxes. He's got gold moving to Switzerland and then going to a nominee account. It's a mess. You can't break that up by the year. But here you can, and it seems to me that the language in Schroeder that I've read to you, as well as the overall requirement of due process and unanimity, suggests that you've got to, unless there's something here to keep you from being able to trace his tax liability to a given year, and you not only could do that, you did do that. It's clear how much he owed for the given year. But there's nothing in Pollen that says if the government can charge it on a year-by-year basis, it must do so. No, it just says that it may charge it in multiple years if it can't make an individual determination. Well, that's not how I read Pollen. I simply read Pollen as if the acts of evasion affect multiple years, then the government may charge a single count that includes multiple years, and that's precisely what we did here. Again, returning to what I said earlier, the decision to direct the RBI commission payments to new perspectives affected his tax liability for every single year going forward. So that evidence would have pertained to every single count, if we had charged this to separate counts. So I think under Pollen, there's no, the defense arguing that Pollen should be limited to its facts. Well, I don't really see a clear logical reason to say that Pollen Hopefully we'll never see facts like that again. That was pretty outrageous. So, Your Honor, where there is a case where the acts, the most important acts of evasion, and I think the RBI income was at the center of this case, and that goes to Vennia and why it was charged here. But where the most important acts of evasion do affect multiple years, there's no harm in charging it in one count. In fact, it's plainly permissible to do so. There's no harm even if we can't determine whether or not the jury was Certainly, because if we correctly charge it as one crime, which we believe it is, then even if the jury found a deficiency as to one year, but not as to another year, that's irrelevant. Because once the decision is made that it was properly charged this way, it doesn't really matter what specific acts the jury found. But we keep properly, keep putting properly in there. You're saying that if we properly charge this way, we could do it because it's proper. That's what you're arguing. That's really circular. Well, but the issue of whether the jury may have found a deficiency as to one year but not another really does go to prejudice. And prejudice doesn't come into play until you decide that there was a problem with the way it was charged. But why isn't that the problem? If you can't tell from this lumping together that there wasn't prejudice here, why doesn't that give rise to the very problem? It's endemic in charging this way. Whenever you charge this way, that's a potential problem. The decision as to whether a count is properly charged is made by looking at the language of the statute, looking at the legislative history, and determining whether Congress specifically spoke to how it may be charged. So Congress could certainly say it is a crime to evade your taxes. So you're saying if Congress allows the prosecution to charge in a way that defies the defendant of his due process rights and his right to a unanimous jury verdict, that's okay because Congress said you can charge that way. That's what you're arguing. Well, unanimous jury verdict as to what? That's the question. As to any one count. As to any one count. Congress says you can charge it this way, but it's clear. Congress doesn't say this. Congress says charge it this way. And then in review, it's clear that in charging that way, the defendant can be subjected to a conviction on one count by something less than a unanimous verdict. That's okay because Congress said that's the appropriate charge. Well, but that requires you to define what is a count, and that's what I'm saying. That analysis depends on looking at the statute and looking at the congressional intent. I mean, in many cases, you could charge an individual with a long-term drug conspiracy, and it doesn't require you to necessarily prove individual transactions as long as the jury finds specific transactions that are sufficient to establish the elements. Yeah, but it's a very, very different crime. Here you're charging him with a specific act of evasion for 2000, 2001, I guess 2000, 2001, 2002, 2003. Specific acts of evasion for those years. He's convicted. He may have been convicted because the jury believed that he, and that's all on one count. And he may have been convicted because the jury unanimously agreed that he did something to violate the law as to 2003, but not as to 2001, 2002. Or they may have believed that he violated the laws to 2002, 2003, not as to 2001. Or they may have believed, beyond reason about all of them, that, yeah, he was guilty for 2001, 2002, 2003. That's different than a drug conspiracy where you've got a continuing conspiracy and there's no temporal relevance whatsoever of the time of the individual act and the act itself. Tax doesn't work that way. Well, it only doesn't work that way because people are required to file yearly returns. But what the statute penalizes is not failing to pay sufficient taxes in a given year. It penalizes a specific act of evasion. And the act of evasion here, the primary act of evasion, was directing the RBI commission payments to new perspectives, which allowed him to evade taxes for all years going forward. That specific act was not directed at any particular year. And that is why we think it was appropriate here to charge all three years in one count. And frankly, even if we had done it... I don't know if you stated it right. I thought he could have had him pay the money to the man on the moon if he put it on his return. I mean, it's not the act of where he told him to send the money. It's the act of not reporting it. Well, it's both. It's the act of where he told him to send the money, provided it was done for a tax evasion reason. And the jury found, clearly found that it was, and I don't think that's an issue here, that he clearly did direct the payments to new perspectives with a tax evasion goal in mind. Well, he couldn't be indicted and convicted simply for the diversion of where the money was sent. The critical act was the payment, the writing up of the return and sending it in. Well, it's both. I mean, there were several acts of evasion, certainly the filing of the returns that failed to report all this income he received. But even if the money went directly to him, if he didn't stick it on the return, it would still be a crime. I mean, it strikes me that that was just a method of assisting him in doing this. Well, it would still be a crime. It would probably be more difficult to prove because he would have the defense that it was simply an oversight. Here, where he took the extra step of funneling the money through another entity, a similar pattern to what he had done with the money he received from Mr. Ford and Mr. Marullo, that, I think, goes a step further and shows that he had a tax evasion goal in mind, that it wasn't simply an oversight when he failed to report this income, that he actually didn't want the IRS to know about it, so Mr. McCracken directed that no 1099s were filed, and he had this sent to this new perspectives entity so that W-2 was never issued for this money. So I think that the decision to send the money to new perspectives is a very strong, clear act of evasion. Wouldn't the jury charge answer the question that Judge McKee posed a minute ago, trying to figure out what the jury found or didn't find? What was the jury charge? The jury was not given a unanimity instruction. Not giving a what? A unanimity instruction as to the act of evasion. We requested one. I wasn't present for the jury conference, so I don't know why that decision was made not to give them one. It certainly would, but we think... No, but I mean, was the jury asked, do you find a conspiracy between 01 and 03, or do you find evasion between 01 and 03, or did it say in each year? What was the verbiage of the jury charge in that regard? The jury was simply instructed as to the elements of the offense. So it was said, you must find a tax deficiency, you must find an act of evasion, and you must find willfulness. All right, so that's just like a drug conspiracy, where an indictment says that from in or about August of 1995 until in or about August of 2002, the defendant trafficked cocaine. The jury just doesn't need to find that something happened every month or every year, as long as within that time frame, the jury makes a finding that the person is guilty of the elements of the offense within the charged time frame. Exactly, that's correct, and we believe the charge was entirely proper here, as it would be in a drug case like that. All right, but then one potential distinction is that in a drug case, as I'm no expert in tax law, but the deficiency, the amount of deficiency is important, correct? For purposes of sentencing. For purposes of sentencing. And the jury is not asked to find what the, or was the jury, the jury is not asked to find the number. No, the jury is not asked to find the number, and in fact the number need not correspond with the number charged in the indictment. So what could get very tricky here is that this gentleman could be convicted by a jury because he did one of these things, satisfying all the elements of the offense in these years, but for all of the payments in 01, 02, and 03, for RBI, for Ford, for Merulo, and Parker, that's a pretty large number, but the jury might have only honed in on one of those small ones. Well, for sentencing purposes, actually, those other payments might come in anyway. I mean, they would be, even if the jury said, we only found that he committed evasion with respect to the RBI income, we could still argue at sentencing that those other payments are relevant conduct and they would be considered as in determining his sentencing level. And under current law, that would be allowed. Absolutely. But aren't you a little troubled, though, that the judge might be asked to make fact-finding that might hammer the guy for purposes of sentencing when, if we could get in the jury room, we would find out that they really only were fixated on one of the small payments here. I mean, we don't know. That's a black box here, right? It is, but it's entirely permissible under current law. I mean, it's still the government's burden to prove beyond the prerogatives of the evidence that he evaded his taxes with respect to all of the income we intend to prove at sentencing, and this Court and all courts that have addressed the issue have said that's fine. In a drug conspiracy, or forget conspiracy, in a drug case, it's entirely possible that the jury might find that the defendant only sold a certain quantity, and at sentencing the government might say, you know what, we're going to prove that he sold this additional quantity, and that, I mean, in a drug case, that can certainly increase a sentence significantly. Thank you. If the Court has no further questions, we would ask the Court to affirm. Here's how messy count two is. The facts as stated. That's a very understated way to begin. Well, 2001 is a perfect example. In 2001, the commission agreement doesn't get signed until late November, and they don't start making commission payments to Mr. Root until December 15th and December 30th. That's a couple thousand dollars for the entire year. Now, Mr. Fisher is arguing that it's very clear there were problems in every single year. Not so in 2001. And there were expenses, if you look at the government's or the defendant's expert, that cancel out any tax deficiency in 2001. There was. But what difference does it make? Who cares whether it's 01 or 02? The jury was given the charge to determine whether the government satisfied all the elements of the offense within that time frame, regardless of whether it was December of 01 or June of 02 or May of 03, right? It was a way to put in highly prejudicial 403 evidence through 2001. Now that's not even brief, the 403 issue. It is, though, because what we're saying, I think it clearly is. When we wrote in our brief on page 16, we said specifically Parker loans and Merulo income and all these things that were happening in other places at other dates, it allows the government to just slop everything together and say it's going to add up to something serious. Trust us. I'm looking at page 16, and the words rule 403 do not appear. That's true, Your Honor. But what I'm saying is the concept is. So it's an argument by osmosis or? No. I mean. No, it's an argument based on the facts of this case. But when we make evidence. Mr. Fisher is saying. With all due respect. It's clear in every single year that there is RBI commissions that we're doing Owing, so don't worry what the jury was thinking. You know what I'm saying? In 2001, it's pretty clear the jury couldn't possibly have come to a substantial deficiency. And by adding one year, 2001, all the way to 2003 and pushing them together, they get evidentiary and procedural advantages to get a conviction that they had no reason to get. And it didn't have to happen. And if you wanted to challenge the evidentiary and procedural advantages, they need to appear in the blue brief or else they're waived. Trials are messy. I'm not a perfect attorney, Your Honor. I'm just trying to point out that it's very hard for anyone to say why did the jury do what they did. That's all. Thank you. We'll take about a five minute break and then we'll continue with.